UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge Alberto ALATORRE,
Defendant–Appellant.

No. 99–50587.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 2000

Filed Aug. 16, 2000

Carla V. Gomez, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant Jorge Alberto Alatorre.

Julie F. Puleo (on the brief) and Anne K. Perry (at oral argument), United States Attorney's Office–Criminal Division, San Diego, California, for plaintiff-appellee United States.

Before: TROTT, FERNANDEZ, and McKEOWN, Circuit Judges.·

McKEOWN, Circuit Judge:

The question in this case is whether the district court must hold a separate hearing before trial, as opposed to making an evidentiary determination during trial, in order to fulfill the "gatekeeping" function outlined in the Supreme Court's trilogy of cases addressing the admissibility of expert testimony: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Here the district court rejected appellant Jorge Alberto Alatorre's request for such a pretrial hearing but permitted him to question the government's proffered expert at trial, in the presence of the jury, via voir dire. Alatorre appeals the court's refusal to grant his request for a separate hearing.[1] Although we believe that it may be appropriate, at least in some cases, to conduct a pretrial or other hearing outside the presence of the jury to assess preliminary questions of relevance and reliability relating to experts, we hold that a separate hearing is not required. Further, under the circumstances presented here, the district court did not abuse its discretion in denying Alatorre's request.

## BACKGROUND

On February 7, 1999, Alatorre, accompanied by his two children, drove a car to the San Ysidro, California, port of entry near San Diego, where he drew the attention of a U.S. Customs Service inspector. While the inspector was questioning Alatorre, a dog alerted to the car he was driving, and upon further inspection, packages of marijuana weighing 68.8 pounds were found in a compartment above the rear tire well. A grand jury indicted Alatorre on charges of importing marijuana, in violation of 21 U.S.C. §§ 952 and 960, and possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Prior to trial, the parties filed motions in limine regarding the government's proposed expert testimony. After a hearing on the motions, the district court ruled that the government could introduce expert testimony on the value of the marijuana seized and on whether it was a distributable quantity but that testimony about the organization and structure of drug enterprises would be admitted only if the defense raised the issue of why no fingerprints were taken from the tire compartment or its contents.

During the in limine hearing, Alatorre requested that a separate "*Daubert* hearing" be held outside the presence of the jury to determine whether the government's proposed expert witness was qualified to testify about the value of the marijuana and to assess whether this testimony was relevant to the sole issue in the case: whether Alatorre knew that the car he was driving contained drugs. The court denied this request but indicated that Alatorre could conduct voir dire of the proffered expert at trial, in the presence of the jury, and stated that if the expert's testimony raised any concerns, then further questioning would be permitted outside the jury's presence.[2] Alatorre did not request a separate hearing with regard to any issue other than value.

---

1. The remainder of Alatorre's claims are addressed in an unpublished Memorandum Disposition rejecting each of these claims and affirming his conviction.

2. The court explained: "I don't find that we need to have any evidentiary hearing outside the presence of the jury on the expertise on that. Unfortunately, I gather, all three of us have heard this so many times, but the reality is, is that their experts will testify it's based

upon the seizures that they make, talking to the people bringing the drugs across, as well as undercover operatives and ... confidential informants, that that's how they find out what the prices are at any one time for both wholesale and retail." The court further noted: "I'm going to let that be laid in front of the jury because I've seen that so many times. To me, that's just a fishing expedition. We know how they get it. And then if you want to take him on voir dire, fine. If there's something

At trial, the government called Lee Jacobs, a senior special agent of the Customs Service, to testify as an expert about the issues of value, distributable quantity, and structure and organization.[3] The government elicited background testimony that Jacobs was familiar with the relative prices of marijuana as a result of his activities "as the case agent, co-case agent, running undercover operations, being an undercover operative, reviewing reports from other agents, and consulting with the various Narcotics Information Network systems and intelligence systems" available to agents in San Diego. The government also elicited testimony that Jacobs had twelve years of experience as a special agent; that he had specialized training in the methods by which narcotics are used and sold; and that, based on his experience, he was familiar with the structure of marijuana smuggling operations.

During voir dire, Alatorre inquired at length into the basis for Jacobs's expertise on the value issue and established that he used the low-end figure cited by the Narcotics Information Network to estimate conservatively the wholesale value of the marijuana seized. When Alatorre renewed his objection to the value testimony, including on *Daubert* grounds, the court overruled his objection. Jacobs then testified about the wholesale and retail value of the marijuana; he explained that the wholesale value increased when the marijuana crossed the border and that the marijuana's value increased again when it was broken down into retail quantities for sale in San Diego.

Alatorre did not voir dire Jacobs with regard to any issue other than value, nor did he object to Jacobs's qualifications (or to the relevance or reliability of his testimony) with regard to any other issue. Accordingly, limited testimony about the structure of marijuana smuggling operations-specifically, that different people within such operations perform different, non-overlapping tasks and that a driver's only task is to drive a load of drugs across the border-went unchallenged. This testimony was offered to rebut the defense's suggestion that failure to lift fingerprints from the marijuana packages or the compartment reflected improper investigative work.

The jury convicted Alatorre on both counts charged, and the district court sentenced him to 21 months imprisonment.

## DISCUSSION

■ We review the district court's decision to admit expert testimony for an abuse of discretion, *see Joiner*, 522 U.S. at 139, 118 S.Ct. 512, except where no objection has been made, in which case we review for plain error, *see United States v. Hanley*, 190 F.3d 1017, 1029 (9th Cir.1999).

■ The Supreme Court's trilogy of cases-*Daubert, Joiner*, and *Kumho Tire*-provides the backdrop for analysis of the issue presented here: whether a separate, pretrial hearing, outside the presence of the jury, is required before expert testimony may be admitted at trial. In light of the Supreme Court's emphasis on the broad discretion granted to trial courts in assessing the relevance and reliability of expert testimony, and in the absence of any authority mandating such a hearing, we conclude that trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function.

*Daubert* has become ubiquitous in federal trial courts. Under *Daubert*, which addressed the standard for admitting expert scientific testimony in a federal trial, the Supreme Court made clear that the Federal Rules of Evidence [4] impose a "gatekeep-

---

that happens during the expert's testimony that appears to open it up, then I will let that be done outside the jury. We'll just excuse them at that point."

**3.** The limited testimony admitted with regard to the structure and organization issue was

proper because Alatorre opened the door by raising the fingerprints issue.

**4.** Specifically, Rule 702, states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a wit-

ing" duty on the district court, requiring the court to "screen[ ]" the proffered evidence to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 597, 589, 113 S.Ct. 2786. The Court explained that:

> Faced with a proffer of expert scientific testimony, ... the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.... Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.

*Id.* at 592–93, 113 S.Ct. 2786. After discussing a number of factors that would ordinarily bear on the reliability inquiry, the Court reiterated that "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* at 594–95, 113 S.Ct. 2786.

In *Joiner* and *Kumho Tire*, the Court further defined the contours of the gatekeeping duty and the level of deference to be accorded the trial court's decisions in this arena. After clarifying that the abuse of discretion standard applies to the trial court's decision to admit or exclude expert testimony under *Daubert*, *see Joiner*, 522 U.S. at 138–39, 118 S.Ct. 512, the Court held that *Daubert*'s "general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167. In

addition, the Court held that the trial court "*may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* (emphasis added). Significantly, underscoring the trial court's discretion, the Court noted that it was "[e]mphasizing the word 'may.'" *Id.* at 150, 119 S.Ct. 1167. The Court then explained that "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141–42, 119 S.Ct. 1167 (emphasis added). Quoting *Daubert*, the Court reiterated that "the gatekeeping inquiry must be tied to the facts of a particular case." *Id.* at 150, 119 S.Ct. 1167 (internal quotations and citation omitted).

We recently reiterated these principles in *United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir.2000), *cert. denied*, —— U.S. ——, 120 S.Ct. 2733, 147 L.Ed.2d 995 (2000), in which we held that the district court properly discharged its gatekeeping function in admitting a police gang expert's testimony about gangs' "code of silence." Recognizing that the "non-scientific" testimony in *Hankey* was subject to the gatekeeping duty, as is true here, we acknowledged that "far from requiring trial judges to mechanically apply the *Daubert* factors—or something like them—to both scientific and non-scientific testimony, *Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." *Hankey*, 203 F.3d at 1168. We rejected the argument that the trial court erred in not assessing the gang expert's testimony in the same way that the district court reviewed the expert's methodology in *Kumho Tire*, citing *Kumho Tire* for the proposition that the trial court must be

---

ness qualified as an expert by knowledge, skill, experience, training, or education, may

testify thereto in the form of an opinion or otherwise."

afforded wide latitude both in deciding whether to admit expert testimony and in deciding how to test reliability. *See id.*

Nowhere in *Daubert, Joiner,* or *Kumho Tire* does the Supreme Court mandate the form that the inquiry into relevance and reliability must take, nor have we previously spoken to this issue.[5] Although the Court stated that the inquiry is a "preliminary" one, to be made "at the outset," *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786, this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury. Indeed, *Kumho Tire* belies any such interpretation:

> The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable.... Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises. Indeed, the Rules seek to avoid "unjustifiable expense and delay" as part of their search for "truth" and the "jus[t] determin[ation]" of proceedings.

*Kumho Tire,* 526 U.S. at 152–53, 119 S.Ct. 1167. If a separate hearing were a prerequisite to admission of expert testimony, then the reference to avoiding "unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is *properly taken for granted,*" *id.* at 152, 119 S.Ct. 1167 (emphasis added), makes no sense. This example, especially when considered together with the Court's references to cases that may require "special briefing or other proceedings" and to concerns about avoiding unjustifiable delay and expense, indicates that the Court did

not intend the imposition of any one method of discharging the gatekeeping duty.

 Our conclusion that a pretrial hearing is not required finds further support in the Court's repeated assertion that the preliminary inquiry as to relevance and reliability is a flexible one, subject to no set list of factors. *See Kumho Tire,* 526 U.S. at 141–42, 119 S.Ct. 1167 ("[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."); *Daubert,* 509 U.S. at 593, 594, 113 S.Ct. 2786 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test."; "The inquiry envisioned by Rule 702 is ... a flexible one.").

Along the same lines is the Court's reminder that "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167 (internal quotation marks and citations omitted). As the Court explained, "[t]oo much depends upon the particular circumstances of the particular case at issue" either to "rule out, [or] rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert.*" *Id.* Notably, the Court has "refrained from offering any prescription regarding how the[ ] many different kinds of expertise might be evaluated by trial courts." DAVID L. FAIGMAN, LEGAL ALCHEMY 86 (1999).

Finally, our case law with regard to Federal Rule of Evidence 104 likewise supports our conclusion. The trial court, acting as gatekeeper, is required to assess, "pursuant to Rule 104(a), whether the expert is proposing to testify to" scientific, technical, or other specialized knowledge that will help the factfinder understand or decide a fact in issue. *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. Just a year after *Daubert* we held that a trial court "is not

---

5. In *Hankey* we did not address the form that the gatekeeping inquiry must take.

required to hold a Rule 104(a) hearing" in order to discharge its duty under the rule "but rather must merely make a determination as to the proposed expert's qualifications." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir.1994). We see no reason to require trial courts to meet a more stringent standard in discharging their gatekeeping duty with regard to the relevance and reliability of expert testimony.

Other circuits agree that no pretrial hearing is required, as does a major commentator on evidence. *See United States v. Nichols*, 169 F.3d 1255, 1262–63 (10th Cir.1999) (rejecting claim that defendant was entitled to a preliminary hearing on admissibility of expert testimony and concluding that court did not abuse its discretion in refusing such a hearing), *cert. denied*, 526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 215 (1999); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir.1998) (rejecting plaintiffs' claim that they were entitled to a hearing on the admissibility of expert opinion, holding that trial court "had a sufficient basis for her decision without holding a hearing" and further explaining that "[w]e have not required that the *Daubert* inquiry take any specific form and have, in fact, upheld a judge's sua sponte consideration of the admissibility of expert testimony"), *cert. denied*, 526 U.S. 1065, 119 S.Ct. 1456, 143 L.Ed.2d 542 (1999); 4 WEINSTEIN'S FEDERAL EVIDENCE § 702.02[2] (2d ed. 2000) ("The admissibility of expert testimony is often decided after a separate hearing. However, the trial judge is not required to hold a hearing on the admissibility of expert evidence."), § 702.05[2][a] ("This latitude allows the court to decide what proceedings, if any, are needed to investigate reliability. Courts generally have not required that a *Daubert* hearing take any specific form.").

The Tenth Circuit's discussion in *Nichols* is thorough and persuasive. *Nichols*

involved a challenge to the scientific foundation for parts of an expert's testimony in one of the Oklahoma City bombing prosecutions. The district court denied a request for an evidentiary hearing on reliability and reserved ruling on the admissibility of the testimony in question until it was offered at trial. *See Nichols*, 169 F.3d at 1262. Citing several cases applying the abuse of discretion standard to the denial of a hearing in other contexts, the court held that this standard was also applicable to "the denial of an evidentiary hearing in the *Daubert* context." *Id.* The court also cited Rule 104 as support for its holding, reasoning that the rule, which states that a hearing shall be conducted outside the presence of the jury when the interests of justice so require, "implies discretion on the part of the trial court to be reviewed only for an abuse." *Id.* at 1263. The court found no abuse of discretion because the techniques used were not novel and Nichols's challenge really went to alleged flaws in the tests. *See id.* The court also referenced the district court's opinion,[6] which stated:

> There is nothing prejudicial to the defendant in reserving ruling on the admission of the opinions and conclusions to be drawn from the testing until it is offered at trial.... All of the necessary foundation must be proved and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted.... If voir dire requires questioning that may be too prolonged ... for hearing by the jury, it may be done during a recess period.

*Id.*

■ The Supreme Court's insistence on flexibility and the need for case-by-case analysis of the proffered expert testimony cannot be squared with Alatorre's insis-

---

**6.** The court also cited *United States v. Davis*, 40 F.3d 1069, 1075 (10th Cir.1994), in which it concluded that the district court, in hearing "lengthy testimony about protocol" at trial, in the presence of the jury, "conducted the func-

tional equivalent of a preliminary hearing" and properly determined whether protocol was followed before permitting the expert to offer an opinion. *Nichols*, 169 F.3d at 1264.

tence that a *Daubert* hearing must be conducted before trial. To hold otherwise would impermissibly narrow the trial court's discretion to decide what procedures are necessary to assess the reliability of challenged testimony. Here the court adopted a practical procedure, well within its discretion, when it allowed Alatorre to explore Jacobs's qualifications and the basis for his testimony at trial via voir dire and then, following voir dire, rejected his renewed objections to the testimony regarding wholesale and retail value.[7] *See Nichols,* 169 F.3d at 1263; *Davis,* 40 F.3d at 1075. Notably, this case does not involve a trial court's refusal to permit any inquiry into an expert's qualifications or the basis for the proffered opinion, nor does it involve an attempt to duck these issues. On the contrary, the trial court permitted Alatorre to question Jacobs—and to question him extensively—and also indicated that it would allow further questioning outside the presence of the jury should that become necessary. Such a procedure is appropriate. *See Nichols,* 169 F.3d at 1263.

Of particular relevance is our decision in *Hankey.* Jacobs's background, as well as the experiential basis of his knowledge, is similar to that of the expert in *Hankey,* who testified on voir dire that he had: 1) twenty-one years of experience with the Compton police department; 2) experience with thousands of gang members in the past decade; 3) formal training in gang structure and organization; and 4) extensive personal knowledge of the two gangs at issue. *See Hankey,* 203 F.3d at 1168–69. We concluded that the district court did not abuse its discretion in admitting the gang expert's testimony given that the court "probed the extent of [the expert's] knowledge and experience" through voir dire during a "motion in limine-FRE 104 hearing," *id.* at 1168–69, and "made findings that the foundation for [the expert's] opinions was relevant and reliable," *id.* at 1170.

■ Here, as in *Hankey,* voir dire established that Jacobs was qualified to testify on both the value and structure issues.[8] He had twelve years of experience as a special agent, specialized training in the methods by which narcotics are used and sold, and extensive knowledge of marijuana smuggling as a result of his work as a case agent and in other capacities. Although the voir dire in *Hankey* was pretrial, in terms of the trial court's "gatekeeping" responsibility as to admissibility of this type of experiential expert testimony, we see no significant difference between the two cases. The same type of background information was before both trial courts. Having found no abuse of discretion in the admission of expert testimony given the foundation established in *Hankey,* we find none here.

We further note that this case is distinguishable from *United States v. Velarde,* 214 F.3d 1204 (10th Cir.2000), in which the Tenth Circuit reversed and remanded the case for a new trial because the district court failed to conduct *any* reliability de-

---

7. Alatorre failed to challenge the structure testimony, either prior to or at trial, on *Daubert* grounds. Accordingly, we review the admission of this testimony for plain error. We find none, in light of the extensive voir dire establishing Jacobs's experience with regard to marijuana smuggling organizations.

8. We have also upheld the admission of value and structure testimony in prior cases. *See, e.g., United States v. Campos,* 217 F.3d 707, 718–19 (9th Cir.2000) (jury "properly heard [agent's] expert testimony that (1) the marijuana had a street value of $120,000; and (2) that 'marijuana drug trafficking organizations, ... particular[ly those involved in] the smuggling or the transportation [of drugs] from Mexico to the United States,' often use human 'mules' whose only 'job is to drive the car, or the truck, or whatever the vehicle happens to be' across the border.") (Pregerson, J., concurring in part) (citation omitted); *United States v. Golden,* 532 F.2d 1244, 1247 (9th Cir.1976) ("The value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute") (citations omitted); *United States v. Patterson,* 819 F.2d 1495, 1507 (9th Cir.1987) ("Expert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it.").

termination with regard to the challenged expert testimony. *See id.* at 1209–11. Faced with requests for a *Daubert* hearing on the reliability of the proposed expert testimony of two government witnesses, the court denied both requests, apparently on the sole basis that it had "had this testimony before in trials, and it's not new and novel...." *Id.* at 1208.

Here, although the trial court initially used similar language in denying Alatorre's request for a *"Daubert* hearing" prior to trial,[9] it specified that he would have an opportunity—during voir dire, at trial—to explore the relevance and reliability of the proposed testimony. The court also stated that if voir dire turned up any issues, further questioning, outside the jury's presence, would be in order. Then, at trial, the court permitted Alatorre to conduct a lengthy voir dire. Finally, after voir dire, in rejecting Alatorre's renewed objections, the court ruled on the relevance and reliability of Jacobs's testimony. This course of events shows that the court did not abandon its gatekeeping function. By overruling Alatorre's objections and permitting the testimony after hearing not only the government's foundational proffer but also extensive voir dire, the court fulfilled its duty to make a determination as to the reliability of the expert's testimony.

Having held that neither the Supreme Court's trilogy of cases nor any of our own compels trial courts to conduct separate, pretrial hearings to discharge their gatekeeping duties, we note that holding such hearings—or at least ensuring an opportunity for voir dire outside the presence of the jury—may be appropriate in certain cases. Trial courts should be mindful of the difficulties posed when counsel must explore an expert's qualifications and the basis for the expert's opinion in the presence of the jury and, depending on the circumstances of the case, should give due consideration to requests that questioning occur unconstrained by that presence. But, in the end, such a determination is a judgment call best left to the discretion of the trial court. That said, the trial court's decision to admit Jacobs's testimony is

AFFIRMED.

---

**9.** Specifically, the court stated in part that "all three of us have heard this so many times before" and "I've seen that so many times. To me, that's just a fishing expedition."