UNITED STATES of America, Plaintiff–Appellee,

v.

Mariano MURILLO, Defendant–Appellant.

No. 00–10042.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2001.

Filed July 6, 2001.

Christopher P. Sonderby, Assistant
United States Attorney, Sacramento, California, for the plaintiff-appellee.

**1172**

John P. Balazs, Assistant Federal Public Defender, Sacramento, California, for the defendant-appellant.

Before: SCHROEDER, Chief Judge, WALLACE and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Mariano Murillo appeals his conviction after a third jury trial for possession with intent to deliver methamphetamine and cocaine. Murillo challenges certain evidentiary rulings, the district court's refusal to compel discovery of unrelated case files in the government's possession, and the district court's refusal to grant a two-level reduction for a minor role in the offense. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

**I**

Murillo was driving a rental car northbound on Interstate 5 in Colusa County, California, on the morning of February 22, 1998. California Highway Patrol Officer Allen Stallman observed Murillo driving in the right lane following a tractor-trailer rig too closely. Officer Stallman pulled into the fast lane of the divided highway and drove parallel to Murillo's car. Murillo was tightly gripping the steering wheel with both hands and looking straight ahead without acknowledging the presence of the marked police car. Stallman found this behavior unusual and backed off so that he could read the license plate and run a radio check to determine if the car was stolen.

After being notified a short time later by the CHP dispatcher that there were no outstanding wants or warrants on the vehicle, he pulled ahead of the truck, clearing the fast lane so that Murillo could get around the truck. Officer Stallman pulled off on the right-hand shoulder and observed Murillo pass him in the slow lane, still tailgating the truck. He caught up with Murillo and pulled him over with the intention of citing him for following too closely in violation of California Vehicle Code § 21703.

Officer Stallman approached Murillo's car on the right-hand shoulder next to the passenger door. He observed food wrappers on the floor which he believed indicated that the driver was on a long road trip. He asked Murillo to produce his driver's license and the registration for the car. When Murillo handed the officer the paperwork, Officer Stallman noticed that Murillo's hand trembled severely. The officer testified that he used nonconfrontational language and tried to calm Murillo by telling the motorist the reason for the stop, but the defendant's nervousness did not abate.

In examining the vehicle paperwork prior to issuance of the citation, Officer Stallman noted that the rental agreement had been signed at 8:00 p.m. the night before which meant that Murillo had driven most of the night from Santa Ana in southern California to Colusa County in northern California. The rental agreement indicated that the car was to be returned to Santa Ana in just two days. Officer Stallman testified that in his experience and based upon special training he had received in narcotics interdiction, a long distance, quick turnaround trip in a rental car was suspicious.

Officer Stallman explained that he was going to issue a citation. Murillo anxiously acknowledged the violation. The officer testified that the defendant's apparent eagerness to accept the traffic citation—and quickly end his encounter with the offi-

cer—suggested to him that more serious criminal activity might be afoot.

While Officer Stallman was issuing the citation, he asked Murillo where he was going. Murillo said he was going to pick up his mother at his aunt's home in Yakima, Washington, but he did not know the address. He could not even describe the location of the residence. Officer Stallman found suspicious the defendant's inability to explain adequately his travel plans.

Because Murillo still seemed exceedingly nervous, the officer asked if he could check his pulse. Defendant consented and the officer determined that his heart was racing at 150 to 160 beats per minute. Officer Stallman testified that Murillo was one of the most nervous drivers he had ever encountered in ten years with the Highway Patrol. After this pulse check, Officer Stallman finished writing the citation and gave the ticket to Murillo to sign.

As a result of what he had observed, Officer Stallman testified that he wondered whether the defendant might be hiding something in the car, so he asked a series of questions to determine whether Murillo was carrying alcohol, weapons, or narcotics. Murillo looked directly at the Officer in denying that his car held alcohol or weapons. He looked down and away when asked about the presence of narcotics in his car. Officer Stallman repeated the same series of questions and Murillo twice gave the same suspicious response by looking away from the officer when asked whether there were drugs in the car.

Officer Stallman asked Murillo for his consent to search the rental car. Using a pre-printed consent to search form written in English and Spanish, Stallman explained the provisions of the form in English since his contact with defendant had confirmed that Murillo was capable of understanding and conversing in English. However, Officer Stallman directed Murillo's attention to the lower half of the consent form written in Spanish to ensure that Murillo knew his rights and what he was signing. Murillo then signed the consent form authorizing the search of his car.

Officer Stallman noticed during the search that two screws on the rear door panel appeared to have been recently removed. The defendant, who had been staring across the freeway during the first portion of the search, turned completely away when Officer Stallman inspected the rear doors of the rental car. By coincidence, a California Highway Patrol Canine Unit from the nearby Williams Area Office arrived to back up Officer Stallman. Based upon his observations concerning the screws on the rear door panel, Officer Stallman asked the canine officer to have his dog examine the interior and rear portions of the car. The dog alerted to the presence of narcotics in the right rear door panel both inside and outside the vehicle. At this point, Officer Stallman asked the defendant, who had been standing unfettered about twenty feet away outside the patrol car, to get into the rear of his police car while other officers removed the right rear door panel of the sedan. They discovered several packages of suspected narcotics which later analysis showed were 3.8 kilograms of methamphetamine and 2.5 kilograms of cocaine, valued at over one million dollars. Murillo was then placed in handcuffs and told that he was under arrest.

The rental car was moved to the nearby CHP Area Office. During an inventory search, Officer Stallman located a star-shaped wrench under the driver's seat that fit one of the four screws holding the rear door panel in place. Officer Stallman also later found a Phillips head drill bit in the defendant's right front pants pocket that fit the remaining three screws on the rear door panels. These tools were apparently

never placed in evidence since they were returned to Murillo along with other property he possessed at the time of booking.

A grand jury indicted Murillo on March 20, 1998, on one count of possessing methamphetamine with intent to distribute and one count of possessing cocaine with intent to distribute. The defense challenged whether Officer Stallman exceeded the scope of the initial enforcement stop, whether the consent to search the car was voluntary, and whether Murillo was unlawfully seized under the Fourth Amendment before he gave consent. The district court held a lengthy suppression hearing and found based upon Officer Stallman's observations and questioning of Murillo that Officer Stallman had articulable suspicion that criminal activity was afoot sufficient to justify a further field detention and a broadened line of questioning. The district court also found that the written consent to search was knowing and voluntary.

Defendant's first two trials resulted in hung juries. After his third trial, a jury found Murillo guilty of both counts and the district court sentenced him to 188 months imprisonment. Murillo timely appeals.

## II

### A. Evidence Rulings.

We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Rahm*, 993 F.2d 1405, 1410 (9th Cir.1993). The denial of a motion to suppress evidence is reviewed de novo and the district court's factual findings are reviewed for clear error. *United States v. Kemmish*, 120 F.3d 937, 939 (9th Cir.1997). The district court's determination that consent to search was voluntary is reviewed for clear error. *United States v. Koshnevis*, 979 F.2d 691, 694 (9th Cir. 1992).

### 1. Evidence Collected From the Warrantless Search.

It is undisputed that the initial roadside stop itself was reasonable because Murillo was following the truck too closely. We review whether the detention impermissibly exceeded the scope of the traffic stop and whether the written consent to search the car was voluntary.

### a. Permissible Scope of the Traffic Stop.

During a traffic stop, a police officer is allowed to ask questions that are reasonably related in scope to the justification for his initiation of contact. *See United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir.1996). In order to broaden the scope of questioning, he must articulate suspicious factors that are particularized and objective. *See id.*

Officer Stallman articulated several suspicious factors that he noticed while questioning Murillo, e.g., extreme nervousness, distinct lack of eye contact at crucial moments in their conversation, inability to explain his travel plans, elevated heart rate, and evidence of a long road trip in a short time frame in a rental car. It is well established that the district court should consider the totality of the circumstances to determine whether reasonable suspicion exists, including the officer's "special training in narcotics surveillance and apprehension." *Florida v. Rodriguez*, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). The district court found the officer's testimony about his observations sufficient to justify broadening the scope of questioning. We defer to the district court's factual findings underlying this determination of "reasonable suspicion" and hold that they are not clearly erroneous.

### b. Voluntariness of Consent to Search.

Murillo asserts that despite the fact that he signed a consent form, the search was not voluntary. The district court carefully considered the totality of the circumstances and made detailed factual determinations after weighing the following factors to determine voluntariness: (1) whether defendant was in custody; (2) whether the arresting officer had drawn his gun; (3) whether *Miranda* warnings had been given; (4) whether the defendant was told he had a right not to consent; and (5) whether the defendant was told a search warrant could be obtained. *See United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988).

■ The district court found that defendant was not in custody at the time he consented to the search. There was no evidence that Officer Stallman had drawn his gun. At the time of consent, *Miranda* warnings had not been given.[1] Murillo was made aware of his right not to consent.[2] Finally, the officer did not claim to have a search warrant or the ability to obtain one. Based upon its factual findings that four out of five factors demonstrated voluntariness, the district court concluded that Murillo voluntarily gave his consent and denied his motion to suppress the evidence. These factual determinations were not clearly erroneous and the court's weighing of the relevant voluntariness factors in light of these facts complies with our case law. *See id.*

### 2. Evidence of Murillo's Car Rental History.

Murillo contends that the district court erred in allowing the prosecution to enter his car rental history into evidence. The district court heard oral argument on the government's motion to admit this evidence and issued an order detailing its findings and conclusion that such evidence was admissible under both Rule 404(b) and Rule 403 of the Federal Rules of Evidence.

■ Evidence of "other acts" is admissible under Rule 404(b) when: (1) sufficient evidence exists for the jury to find that the defendant committed the other acts; (2) the other acts are introduced to prove a material issue in the case; (3) the other acts are not too remote in time; and (4) if admitted to prove intent, the other acts are similar to the offense charged. *See United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir.1991). The evidence of multiple prior car rentals was relevant as tending to show Murillo's knowledge that drugs were secreted in the rental car through demonstration of his modus operandi and to rebut his defense that he was driving the long distance in a short time period to pick up his mother. *See United States v. Williams*, 900 F.2d 823, 826 (5th Cir.1990) (holding extrinsic evidence of defendant's receipt of mailings was relevant to show modus operandi). Each of the admitted car rentals were from the Orange County area for two to four days and Murillo drove over 1,000 miles on each

---

1. The district court weighed the fact that *Miranda* warnings were not given as the only factor supporting evidence of involuntariness. Despite this consideration by the district court, *Miranda* warnings are not required when a person is not in custody. *See United States v. Torres–Sanchez*, 83 F.3d 1123, 1130 (9th Cir.1996).

2. The district court found that even if Murillo had a poor understanding of English, the written consent form, which advised him of his right not to consent, was also written in his native Spanish. In determining whether a defendant understood adequate English to find voluntary consent, we have specifically acknowledged that issue "could probably have been avoided" with "a written *Miranda* waiver." *United States v. Garibay*, 143 F.3d 534, 539 n. 10 (9th Cir.1998).

rental. Some of the road trips totaled within a few miles of each other—approximately the roundtrip distance between Santa Ana, California, and Yakima, Washington. Certain car rental entries were excluded because they were not sufficiently similar or were too remote in time. Based upon the relevant factors in Rule 404, the district court did not abuse its discretion by admitting this car rental evidence. *See United States v. Ramirez,* 176 F.3d 1179, 1181–82 (9th Cir.1999).

■ We must give "considerable deference" to the trial court's decision to admit evidence as probative under Rule 403. *See United States v. Cordoba,* 194 F.3d 1053, 1063 (9th Cir.1999). Here, the district court carefully weighed the probative value of the rental car history—to show knowledge and to rebut his defense— against its prejudicial effect before admitting the evidence. The district court did not abuse its discretion in deciding that the evidence of a pattern of car rentals prior to the offense charged had significant probative value that substantially outweighed its prejudicial effect in the determination of Murillo's knowledge that he was transporting drugs.

### 3. Expert Testimony of DEA Agent.

At trial, DEA Special Agent James Delaney testified about the value of the drugs found in Murillo's rental car; the number of doses that such an amount constituted; and the modus operandi of drug traffickers. As part of his modus operandi testimony, he described the typical travel itineraries of drug couriers, why drug couriers use rental cars, and how drug traffickers do not entrust large quantities of drugs to people who are unaware that they are transporting them. Murillo contends that this evidence was impermissibly admitted because it constitutes inadmissible "drug courier profile" evidence and it does not meet the standards of reliability under

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

### a. Drug Courier Profile Testimony.

■ Murillo argues that the district court erred by allowing the prosecution to put on expert testimony consisting of a drug courier profile as substantive evidence of his guilt. The district court acknowledged that evidence of a typical "drug courier profile" is not admissible as substantive evidence of guilt. *See Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (defining drug courier profile evidence as "a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics"). Yet, the type of evidence presented at Murillo's trial was not simply of a drug courier profile. *See Cordoba,* 104 F.3d 225, 230 (9th Cir.1997) (holding that expert testimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters was not drug courier profile testimony). Rather, the evidence offered at Murillo's trial was expert testimony of the modus operandi of couriers involved in drug trafficking organizations. *See United States v. Johnson,* 735 F.2d 1200, 1202 (9th Cir.1984) ("[G]overnment agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi" because "[s]uch evidence helps the jury understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.").

### b. Drug Trafficking Organization Testimony.

We have upheld the admission of modus operandi testimony regarding the operation and structure of drug trafficking organizations in similar cases. *See e.g., United*

*States v. Campos*, 217 F.3d 707, 718–19 (9th Cir.2000); *Cordoba*, 104 F.3d at 229–30. However, we recently reversed and remanded a drug conviction because the district court abused its discretion by admitting similar expert testimony on relevancy grounds in *United States v. Vallejo*, 237 F.3d 1008 (9th Cir.2001), as amended 246 F.3d 1150 (9th Cir.2001). Under the Federal Rules of Evidence, testimony may not be admitted at trial unless it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

*Vallejo* presented different facts than the instant case. In *Vallejo*, the government did not assert at trial, nor on appeal, that the evidence was relevant to show the defendant's knowledge that he was in possession of the drugs. *See* 237 F.3d at 1016. Instead, the government explained in *Vallejo* that it routinely introduced expert testimony on the structure of drug trafficking organizations to make up for the lack of fingerprints on the drugs in question. *Id.* Vallejo never indicated any intent to, nor did he, raise the lack of fingerprint evidence as probative of his lack of knowledge that he possessed drugs. *Id.* In contrast, Murillo designated a fingerprint expert before trial and argued in his defense at trial that no fingerprints were found on the drug packages.

We acknowledged the significant import of this factual difference in *Vallejo*. *See id.* at 1016 n. 4 (as amended). We distinguished our holding in *Vallejo* from *United States v. Alatorre*, 222 F.3d 1098, 1099 (9th Cir.2000), by noting that there, the district court properly limited the expert testimony's admissibility by allowing it "only if the defense raised the issue of why no fingerprints were taken from the tire compartment [where the drugs were found] or its contents." *Vallejo*, 237 F.3d at 1016 n. 4. In *Alatorre*, as in the instant case, the sole issue at trial was whether defendant knew that the car he was driving contained drugs. *See* 222 F.3d at 1099.[3] There, we affirmed the admission of expert testimony on the value, organization, and structure of drug smuggling organizations. *Id.* at 1104 n. 8 (citing *Campos*, 217 F.3d at 718–19).

The breadth of the expert testimony in *Vallejo* is also distinguishable from Agent Delaney's testimony at Murillo's trial. In *Vallejo*, the expert explained in detail the structure and operations of hypothetical drug trafficking organizations, despite the lack of allegation by the government that Vallejo participated in a drug conspiracy or played any role other than that of a courier. *See Vallejo*, 237 F.3d at 1015–16. We considered the evidence irrelevant and unfairly prejudicial because it implied that Vallejo knew how large organizations operated and therefore knew drugs were hidden in the vehicle he drove across the border. *See id.* at 1016–17.

At Murillo's trial, Agent Delaney limited his testimony to the modus operandi of drug couriers. Agent Delaney did not extrapolate the various roles individuals might play in hypothetical drug trafficking organizations, nor did he imply that Murillo participated in a large-scale operation. Rather, the expert testimony went right to the heart of Murillo's defense that he was simply an unknowing courier. It is clear that *Vallejo* did not address the admissibility of the government's use of "unknowing courier" testimony, in which a law enforcement official testifies that drug

---

**3.** On appeal, the *Alatorre* panel primarily focused on whether a separate pretrial hearing was required to determine the expert's reliability under *Daubert v. Merrell Dow Pharma-* *ceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co.*, 526 U.S. at 137, 119 S.Ct. 1167.

traffickers do not entrust large quantities of drugs to unknowing transporters. *See id.* at 1016, as amended by 246 F.3d 1150 (acknowledging as much in a new footnote). The holding in *Vallejo* does not apply to "unknowing courier" testimony such as that in the instant case.

Murillo also objected to the admission of the "unknowing courier" expert testimony, under Federal Rule of Evidence 704, to the prosecution's questioning regarding whether or not drug traffickers typically entrust large quantities of drugs to couriers who are unaware that they were transporting them. After the defense's objection, the prosecution argued that it had limited the question in terms of the DEA agent's experience with the subject area, and not to whether Murillo had the requisite mens rea relevant to the ultimate issue—Murillo's knowledge that drugs were in the car. *See United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir.1997).

■ Under Rule 704(a), experts are allowed "to give their opinions regarding ultimate factual issues." *United States v. Plunk*, 153 F.3d 1011, 1018 (9th Cir.1998). A limited exception to this general rule exists in criminal cases in that expert witnesses may not testify as to the mental state of a defendant in a criminal case when the mental state constitutes an element of the crime charged. *See* Fed. R.Evid. 704(b). *See also Morales*, 108 F.3d at 1038. Here, the prosecution limited its questioning to (1) whether in Agent Delaney's experience, drug traffickers entrusted thousands of dollars of drugs to couriers who did not know they were transporting them and (2) why, in his experience, traffickers did not do so. Because this limited questioning only evoked expert testimony as to Agent Delaney's experience with drug traffickers and not any "explicit opinion" of Murillo's state of mind or knowledge of his transportation of drugs, we hold that the expert testimony here did not violate Rule 704(b). *See Plunk*, 153 F.3d at 1018; *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir.1990) (holding that expert must offer his direct opinion of defendant's guilt to violate Rule 704(b), not just the general practice of drug operatives).

### c. Reliability of Expert Testimony under *Kuhmo Tire.*

■ Murillo also contends that the district court erred in admitting the DEA agent's testimony because it did not meet the standards of reliability under Rule 702 [4] and *Kumho Tire.* In *Kumho Tire*, the Supreme Court expanded the *Daubert* test for scientific expert witnesses to include expert testimony involving technical and other specialized knowledge. *See* 526 U.S. at 141, 119 S.Ct. 1167. In applying *Kumho Tire*, we note the Supreme Court's continued emphasis on the trial court's "broad discretion" in assessing the relevance and reliability of expert testimony. *See Alatorre*, 222 F.3d at 1100. *See also United States v. Hankey*, 203 F.3d 1160, 1164 (9th Cir.2000) (affirming the admission of expert testimony on gangs' code of silence given by police expert under district court's broad discretion standard). Under this deferential standard of review, and in light of clear evidence in the trial transcript that an adequate voir dire was conducted to determine Agent Delaney's qualifications to testify, *see Alatorre*, 222 F.3d at 1104, the district court did not abuse its discretion in the admission of this expert testimony under *Kumho Tire.*

**4.** "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

### 4. Discovery of Impeachment Evidence.

During Murillo's second trial, Agent Delaney testified that he was aware of no cases where a drug dealer entrusted a large quantity of illegal drugs to someone who did not know they had the drugs. In an effort to impeach this testimony at his third trial, Murillo sought to discover (1) documents from the U.S. Attorney's office listing all recent cases where the prosecution was dropped due to insufficient evidence of knowledge; (2) reports of DEA agents who stopped and then released people who possessed a large quantity of drugs due to lack of knowledge; and (3) any other information to contradict the expert's theory that a drug dealer would not entrust someone with the contraband without knowledge that they were transporting drugs.

In general, the prosecution has a duty to produce evidence "[w]hen faced with a request for specific evidence that is material to the issue of the defendant's guilt." *United States v. Lehman,* 756 F.2d 725, 729 (9th Cir.1985). However, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The testimony sought to be impeached was based upon Agent Delaney's experience and his opinion. The "specific evidence" sought by Murillo does not pass the materiality test that applies to both exculpatory evidence and impeachment evidence. Even if some people suspected of transporting drugs were not prosecuted or were released, such decisions are not material to Murillo's guilt and are not the type of impeachment evidence that the prosecution had a duty to disclose under our case law. The district court did not err in denying defendant's discovery motion.

### B. Sentencing Determination.

The issue of whether a defendant is a minor or minimal participant in a criminal offense under the particular facts of the offense is reviewed for clear error. *United States v. Hatley,* 15 F.3d 856, 859–60 (9th Cir.1994). The district court's legal interpretation of the Guidelines is reviewed de novo. *Id.* It is well established that the issue of whether a defendant is a minor participant is primarily a question of fact. *See United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir.1989).

Where drugs are present in significant quantities, that in itself is sufficient to deny a sentencing reduction. *Id.* at 557–58. Here, the multi-kilogram quantities of drugs entrusted to Murillo were worth over one million dollars. Further, the evidence showed that this was more than a one-time trip as a drug courier and suggested that the defendant had engaged in identical activity on multiple occasions in the 10 months preceding his arrest. Accordingly, the district court did not clearly err under U.S.S.G. § 3B1.2(b) by refusing to reduce Murillo's sentence two levels for his claimed minor role in the offense.

### III

The district court did not abuse its discretion in admitting the challenged evidence from the consensual search and Agent Delaney's testimony. It did not commit clear error in denying defendant's discovery motion or the motion to grant a minor participant reduction.

AFFIRMED.