OPINION
 

 GOULD, Judge.
 

 ¶ 1 Alfredo Gonzalez appeals his conviction for transportation of dangerous drugs for sale. For the reasons that follow, we affirm. In reaching our decision, we hold that expert testimony as to the
 
 modus operandi
 
 of a drag trafficking organization may, depending upon the facts and circumstances of a case, be admitted as evidence.
 
 [1]
 
 There is no per se rule of inadmissibility for such testimony, and trial courts have the discretion to consider the relevancy and danger for unfair prejudice of such evidence on a case-by-ease basis.
 

 
 *552
 

 Factual Background
 

 ¶ 2 On July 27, 2010, Department of Public Safety (“DPS”) Sergeant Kasun (“Kasun”) conducted a traffic stop of a vehicle heading north on Interstate 17 between Sunset Point and Cordes Junction.
 
 [2]
 
 Jose Arenas-Pinzon (“Pinzón”) was the driver of the vehicle, and Gonzalez was sitting in the front passenger seat. Kasun asked Pinzón to exit
 
 the car,
 
 and then asked Pinzón where he was going. Pinzón told Kasun he and Gonzalez were heading to Oklahoma to work for a month. Pinzón was unable to identify the registered owner of the vehicle. When Kasun asked Pinzón how long he had known Gonzalez, Pinzón stated he had known him for two weeks.
 

 ¶ 3 Kasun returned to the vehicle, and observed a cracked windshield on the passenger side consistent with “prying the windshield out of place.” Kasun noted “extremely fresh” glue around the windshield, indications that the windshield wipers had recently been removed, and “freshly tooled” screws holding the cowling around the windshield in place. Kasun also observed that the interior of the vehicle was “extremely dirty” except for the dashboard, which was “freshly Armor-Ailed, very clean up on top,” and “looked inconsistent with the rest” of the vehicle.
 

 ¶ 4 Eventually, Kasun asked Gonzalez where he and Pinzón were going. At odds with Pinzon’s statement, Gonzalez stated that they were going to Kansas to drop off the car with an unknown person, and then would immediately return to Phoenix by bus. When Kasun asked Gonzalez how long he had known Pinzón, Gonzalez replied he had known Pinzón for six months. Kasun also noticed Gonzalez initially appeared to be “extremely nervous” and “very distant,” and avoided eye contact whenever Kasun asked him if there were illegal drugs in the car.
 

 ¶ 5 Both Pinzón and Gonzalez signed consent forms permitting Kasun to search the vehicle. During this time, a canine officer had arrived; the drug detection dog performed a search of the vehicle and alerted to the front fender well. Kasun knew “that Ford products have a natural structural void underneath the windshield cowling.” Based on his knowledge, the drug dog’s alert to the car, and his identification of fresh spray paint and glue on the dash, Kasun removed the windshield to access the “void,” and found three plastic containers containing a total of 2.5 pounds of methamphetamine. On the floorboard behind the passenger seat, Kasun found a screwdriver that looked as if it had been “filed down to be used more as a pry bar,” with fresh glue on it “consistent with the glue that was on the windshield,” and a set of latex gloves.
 

 ¶ 6 Kasun arrested the two men. Following the arrest, Kasun and Detective Audsley (“Audsley”) questioned Gonzalez. During questioning, Gonzalez denied knowing any illegal drugs were in the car. Gonzalez stated he was suspicious that there was something in the vehicle, and so he had asked Pinzón “five or six times” whether there was anything illegal in the car. Each time Gonzalez asked this question, Pinzón denied that there were any drugs in the vehicle. Despite Pinzon’s repeated denials, Gonzalez thought that Pinzón might be aware that there were drugs in the vehicle, and thought that Pinzón may have lied to him.
 

 ¶ 7 Both Pinzón and Gonzalez were charged with possession of dxmg paraphernalia and transportation of dangerous drugs for sale. Separate trials were held for each defendant. The jury acquitted Gonzalez of possession of drug paraphernalia, but convicted him of transportation of dangerous drags for sale, and the eoui’t sentenced him to a mitigated tex’m of five years in pxison. Gonzalez timely appealed.
 

 Discussion
 

 I.
 
 Modus
 
 OperandilDrug Courier Profile Evidence
 

 ¶ 8 To prove its case at trial, the State had to show that Gonzalez knew there was methamphetamine in the vehicle, and that it was being tx-ansported for sale. Ariz. Rev. Stat. (“AR.S.”) §§ 13-3407(A)(7) (“A person shall
 
 *553
 
 not knowingly: ... Transport for sale ... a dangerous drag.”), 13-105(10)(b) (2010). Gonzalez’s defense was that he had no knowledge of the methamphetamine in the vehicle. As circumstantial evidence of Gonzalez’s knowledge, the State introduced the testimony of Sergeant Manera (“Manera”). He testified that drug-trafficking organizations, like legitimate businesses, have a profit motive, and do not “typically” entrust $112,000
 
 [3]
 
 worth of their drugs to an “unknowing transporter” because “[t]hey need to know that that person can be trusted and that it’s going to make it from point A to point B, and that somebody’s not going to drive off with it, or they’re not going to not deliver it.”
 

 ¶ 9 Before trial, counsel for Gonzalez agreed that Manera’s testimony was not the type of “drug courier profile evidence” that was inadmissible at trial. She also stated she would not object to its admission as long as the State offered sufficient foundation. The court denied the State’s pretrial motion to admit this testimony as premature, and ruled that its admissibility would “be determined by relevance and foundation and other matters that will have to be established at the time that the evidence is sought to be presented at trial.” When Manera testified at trial, the only objection made by Gonzalez’s counsel was that the State was leading the witness.
 

 ¶ 10 On appeal, Gonzalez argues the trial court erred by admitting Manera’s “drag courier profile evidence.” Because Gonzalez failed to object to this testimony at trial, and in fact conceded before trial that it was not “drug courtier profile evidence,” we review this claim of error for fundamental error.
 
 See State v. Henderson,
 
 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). On fundamental error review, appellant has the burden to show error, that the error was fundamental, and that he was prejudiced thereby.
 
 Id.
 
 at 567-68, ¶¶ 20, 22, 115 P.3d at 607-08.
 

 A. Drug Courier Profile Evidence
 

 ¶ 11 On appeal, Gonzalez incorrectly characterizes Manera’s testimony as “drug courier profile” evidence. Drag courier profile evidence is “an ‘informal compilation of characteristics’ ... typically displayed by persons trafficking in illegal drugs.”
 
 State v. Lee,
 
 191 Ariz. 542, 544, ¶ 10, 959 P.2d 799, 801 (1998) (citing
 
 Reid v. Georgia,
 
 448 U.S. 438, 440-41, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980));
 
 see also United States v. Cordoba,
 
 104 F.3d 225, 229-30 (9th Cir.1997). For example, in
 
 Lee
 
 the drug courier profile evidence focused on the fact that defendant was carrying a hard-sided plastic suitcase; taking a flight to Chicago, which was known as a “very high demand area for shipment of illegal drugs from Arizona”; and had checked in late for his flight, a common practice of people transporting drugs from the Phoenix airport.
 
 Lee,
 
 191 Ariz. at 545, ¶ 13, 959 P.2d at 802. As the court noted in
 
 Lee,
 
 drug courier profile evidence may be properly admitted at a suppression hearing to determine whether reasonable suspicion exists for a stop.
 
 Id.
 
 at ¶ 11.
 

 ¶ 12 Drug courier profile evidence, however, is inadmissible at trial as substantive evidence of a defendant’s guilt.
 
 Id.
 
 at 545-46, ¶¶ 14-18, 959 P.2d at 802-03. In
 
 Lee,
 
 the court held that such evidence is unduly prejudicial because it impermissibly suggests to the jury that “because someone shares characteristics — many of them innocent and commonplace — with a certain type of offender, that individual must also” be guilty.
 
 Id.
 
 at 545, ¶¶ 12, 14, 959 P.2d at 802;
 
 see State v. Cifuentes,
 
 171 Ariz. 257, 257, 830 P.2d 469, 469 (App.1991) (stating that the “use of profile evidence to indicate guilt ... creates too high a risk that a defendant will be convicted not for what he did but for what others are doing”);
 
 State v. Walker,
 
 181 Ariz. 475, 481, 891 P.2d 942, 948 (App.1995) (citing cases from several jurisdictions that have “condemned” the use of drug courier profile evidence as substantive proof of guilt).
 

 B.
 
 Modus Operandi
 
 Evidence
 

 ¶ 13 Expert testimony that drag traffickers do not entrust large quantities of drags to unknowing transporters is not drug
 
 *554
 
 courier profile evidence, but rather, is
 
 modus operandi
 
 evidence.
 
 See Cordoba,
 
 104 F.3d at 230. Unlike drug courier profile evidence,
 
 modus operandi
 
 evidence is not admitted to prove that a defendant is guilty because he fits “the characteristics of a certain drug courier profile,” but is properly admitted to assist the jury in understanding the
 
 modus operandi
 
 of a drug trafficking organization.
 
 Id.
 
 Our Supreme Court recognized in Lee that such expert testimony may be admissible to explain a drug trafficking organization’s
 
 modus operandi. Lee,
 
 191 Ariz. at 545, ¶ 11, 959 P.2d at 802;
 
 see also State v. Salazar,
 
 27 Ariz.App. 620, 624-25, 557 P.2d 552, 556-57 (1976) (holding that expert testimony describing the common counter-surveillance techniques of narcotics dealers was admissible).
 

 ¶ 14 Several other courts have recognized the distinction between drug courier profile evidence, which is inadmissible as substantive evidence of guilt, and
 
 modus operandi
 
 evidence, which is admissible.
 
 See United States v. Sepulveda-Barraza,
 
 645 F.3d 1066, 1072 (9th Cir.2011) (holding that “expert testimony on drug trafficking organizations and the behavior of unknowing couriers is admissible when relevant, probative of a defendant’s knowledge, and not unfairly prejudicial”);
 
 United States v. Murillo,
 
 255 F.3d 1169, 1176-78 (9th Cir.2001) (stating that expert testimony of
 
 modus operandi
 
 of couriers in drag trafficking organizations is, unlike drug courier profile testimony, admissible expert testimony),
 
 overruled on other grounds as recognized in United States v. Mendez,
 
 476 F.3d 1077, 1080 (9th Cir.2007);
 
 United States v. Campos,
 
 217 F.3d 707, 712 (9th Cir.2000) (same);
 
 United States v. Vasquez,
 
 213 F.3d 425, 427 (8th Cir.2000) (same).
 

 C. Manera’s Testimony
 

 ¶ 15 Manera’s testimony was admissible as
 
 modus operandi
 
 evidence; the testimony was identical to the
 
 modus operandi
 
 testimony admitted in
 
 Cordoba,
 
 104 F.3d at 229-30. The testimony was not offered, as Gonzalez argues, to show that Gonzalez “was guilty because he fit the characteristics of a certain drug courier profile.”
 
 See Cordoba,
 
 104 F.3d at 230. Rather, it was offered to show how drug trafficking organizations generally operate with respect to drug couriers; such organizations typically hire people they know and trust and do not commonly use unknowing drug couriers. This testimony provided circumstantial evidence of Gonzalez’s knowledge of the drags in the car, a fact that went to the heart of Gonzalez’s defense theory at trial.
 
 See id.
 
 at 229-30.
 

 ¶ 16 Manera’s testimony was proper because it was limited to the general practices of drug organizations. He did not testify as to Gonzalez’s awareness or knowledge of the drugs in the vehicle.
 
 Fuenning v. Superior Court,
 
 139 Ariz. 590, 605, 680 P.2d 121, 136 (1983) (holding that a witness may not testify as to whether a defendant is innocent or guilty);
 
 Murillo,
 
 255 F.3d at 1178 (stating that expert opinion testimony of officer regarding
 
 modus operandi
 
 was admissible where officer did not offer “any ‘explicit opinion’ of defendant’s state of mind or knowledge of his transportation of drugs”). Man-era also properly qualified his testimony. He did not testify that drag organizations never use unknowing couriers; rather, he testified that it is “unlikely” they would hire such couriers, and that they “typically” do not hire unknowing couriers.
 

 ¶ 17 In
 
 Murillo,
 
 a highway patrol officer observed the defendant driving a vehicle on Interstate 5 in California. 255 F.3d at 1172. The officer noticed that Murillo, the defendant, was driving too close to a tractor-trailer rig.
 
 Id.
 
 Eventually, the officer stopped defendant and cited him for a traffic violation.
 
 Id.
 
 During the traffic stop the defendant acted nervous and provided inconsistent, evasive details about his travel plans.
 
 Id.
 
 at 1172-73. Murillo gave the officer consent to search the vehicle, and during the search the officer discovered two screws on the rear quarter panel that appeared to have been recently removed.
 
 Id.
 
 at 1173. A drag detection canine was called to the scene and alerted to the presence of drugs in the right rear quarter panel.
 
 Id.
 
 Inside the door panel the officer discovered 2.5 pounds of methamphetamine and 3.8 pounds of cocaine valued at over $1,000,000.
 
 Id.
 
 During an inventory search of the vehicle, officers found a wrench
 
 *555
 
 that fit one of the screws on the quarter panel; the officers also found a Phillips head drill bit in Murillo’s pants that fit the remaining three screws on the door panel.
 
 Id.
 
 Murillo was charged with one count of possessing methamphetamine with intent to distribute, and one count of possessing cocaine with intent to distribute.
 
 Id.
 
 at 1174.
 

 ¶ 18 At trial, the sole issue was whether Murillo knew there were illegal drugs in the ear. As circumstantial evidence of Murillo’s knowledge, the state offered the testimony of DEA Special Agent Delaney (“Delaney”).
 
 Id.
 
 at 1176. Delaney testified as to the
 
 modus operandi
 
 of drug trafficking organizations: specifically, that “drug traffickers do not entrust large quantities of drugs to people who are unaware that they are transporting them.”
 
 Id.
 
 Murillo was found guilty, and on appeal, he asserted the trial court erred by admitting Delaney’s “drug courier profile” testimony.
 
 Id.
 

 ¶ 19 In affirming
 
 Murillo’s
 
 conviction, the court stated that Delaney’s testimony was not inadmissible drug courier profile testimony, but rather was admissible
 
 modus operandi
 
 evidence.
 
 Id.
 
 at 1177-78. The court held the testimony was relevant, going “right to the heart of Murillo’s defense that he was simply an unknowing courier.”
 
 Id.
 
 at 1177. The court also noted that Delaney did not testify as to the defendant’s state of mind, but limited his opinion to whether: (1) in his experience, “drug traffickers entrusted thousands of dollars of drags to couriers who did not know they were transporting them,” and (2) “why, in his experience, traffickers did not do so.”
 
 Id.
 
 at 1178.
 
 [4]
 

 Conclusion
 

 ¶ 20 For the foregoing reasons, in addition to those set forth in our separately filed memorandum decision, we affirm Gonzalez’s conviction and sentence.
 

 CONCURRING: MAURICE PORTLEY, Presiding Judge and ANN A SCOTT TIMMER, Judge.
 

 [1]
 

 . Appellant raised additional issues, which we have addressed in a separately filed memorandum decision pursuant to Arizona Rule of Civil Appellate Procedure 28(g).
 

 [2]
 

 . We view the evidence in the light most favorable to supporting the conviction.
 
 State v. Moody,
 
 208 Ariz. 424, 435, ¶ 2 n. 1, 94 P.3d 1119, 1130 n. 1 (2004).
 

 [3]
 

 . At trial, Manera testified that 2.5 pounds of methamphetamine has a street value of $112,500.
 

 [4]
 

 .
 
 Murillo
 
 also stands for the proposition that
 
 modus operandi
 
 evidence is admissible in “non-complex" cases; specifically, those cases where one or two couriers are in a vehicle containing illegal drugs.
 
 See Sepulveda-Barraza,
 
 645 F.3d at 1070-72. We hold that
 
 modus operandi
 
 evidence is not limited to complex drug cases, and may be admitted in non-complex, drug courier cases such as the present case.