**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel Joseph McGOWAN,**
**Defendant–Appellant.**

**No. 00–50725**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 2001

Filed Dec. 19, 2001

Steven F. Hubachek, Julie A. Blair, San Diego, California, for the defendant-appellant.

Patrick O'Toole, United States Attorney, Scott H. Saham, Assistant United States Attorney, U.S. Attorney's Office, San Diego, California, for the plaintiff-appellee.

Before: GOODWIN, WALLACE and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Daniel McGowan appeals his convictions for importation of marijuana in violation of 21 U.S.C. § 952 and § 960, and for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He argues, *inter alia,* that the district court erred in admitting expert testimony regarding the structure of drug trafficking organizations in a non-conspiracy importation case. Under the circumstances presented by this case, we conclude that admission of the testimony was error.

I

On July 2, 2000, Daniel McGowan drove a 2000 Ford Windstar from Mexico into the United States at the Otay Mesa Port of Entry, accompanied by a passenger, Mary Joanne Ramirez. While McGowan and Ramirez were waiting in the pre-primary inspection area, U.S. Customs Canine Enforcement Officer Cagigas's dog Spencer alerted to the gas tank of their vehicle by changing behavior and scratching at the tank. Officer Cagigas informed Customs Inspector Wilkins, who was working the primary lane, that Spencer had alerted to the vehicle. Inspector Wilkins then questioned McGowan. In response to Inspector Wilkins's questions, McGowan stated that he was not bringing anything into the United States and had gone to Mexico to go to the mall. McGowan also stated that he was driving a rental car, had not lent it to anyone, had put a quarter tank of gas in the car earlier that day while in San Diego, and had filled the tank with gas a few times previously.

Inspector Wilkins escorted the vehicle and McGowan and Ramirez to the secondary lot where he conducted a more intensive inspection of the vehicle. Wilkins did not initially notice anything out of the ordinary about the vehicle or its gas tank. However, when he tapped the gas tank, he observed that it sounded hard, as if it

contained something solid rather than gasoline. Wilkins then observed that the black paint had been scraped off of some of the bolts on the undercarriage of the gas tank, likely by a wrench, leaving shiny marks. Wilkins accessed the inside of the gas tank and removed approximately thirty-eight vacuum-sealed packages, weighing approximately forty-five and a half pounds. The contents of the packages field-tested positive for marijuana. The marijuana packages mostly filled the gas tank, making it so that the tank could hold no more than four to six gallons of gas.

Subsequent investigation confirmed that McGowan had rented the vehicle from Enterprise Rental in La Puente, California on June 28, 2000 in the early afternoon. Border crossing information indicated that the vehicle crossed into Mexico later that afternoon, returned to the United States on the evening of June 30, and crossed back into Mexico on July 2 at 8:15 a.m. Receipts found on McGowan's person at the time of his arrest indicated that he had purchased approximately fifteen gallons of gas from a San Diego gas station on June 28. Other receipts showed that he had made purchases from various stores in Tijuana, Mexico on July 2 between 10:51 a.m. and 12:55 p.m.

McGowan was subsequently convicted of importation of marijuana and possession with intent to distribute marijuana and sentenced to twenty seven months custody and three years supervised release.

## II

Prior to the trial, McGowan moved *in limine* for the exclusion of expert testimony concerning the structure of drug trafficking organizations pursuant to Fed. R. Evid 401, 403 and 702, arguing that it was inadmissible under *United States v. Vallejo*, 237 F.3d 1008 (9th Cir.2001), *amended by* 246 F.3d 1150 (9th Cir.2001). The government justified admission of the testimony on the basis (1) that it believed the defense would raise an argument about the lack of fingerprints on the marijuana packages found in the gas tank, and (2) that the testimony would "give a context to the situation of what is actually occurring." McGowan's counsel responded by offering to stipulate that she would not raise the lack of fingerprints as a defense.

The district court denied the motion *in limine*, citing three reasons: (1) the expert testimony would be relevant on the issue of timing; (2) the testimony would explain why drug couriers "don't fit the stereotypical, 'Miami Vice' type of concept of a drug dealer, driving fancy, expensive cars; that rather everyday people are used to bring the drugs across the border"; and (3) the testimony would be relevant to rebut defense arguments concerning the absence of fingerprints on the bags containing the drugs.

During the trial, Special Agent Villars of the United States Customs Service testified regarding the structure of drug trafficking organizations and the reasons that it would not have been useful for the government to fingerprint McGowan's vehicle or the marijuana found there. Specifically, Villars testified that in a drug trafficking organization, each member has a specific duty, with the functions compartmentalized. Villars also testified that fingerprinting the marijuana packaging or the vehicle itself does not help track down perpetrators, because: the packaging used, as well as the presence of gasoline, makes it difficult to lift clear prints; any prints that could be lifted are likely to be those of the packager, not the driver; and

the packager is likely to be someone "south of the border" whose prints are not on file. He also testified that fingerprints taken from the vehicle itself are not useful because anyone can touch a vehicle. Villars concluded by testifying that in a drug trafficking organization, the person who loads the vehicle with the marijuana is not same person who drives it across the border.

### III

The admission of the expert testimony in this case was improper under *Vallejo,* 237 F.3d at 1015–17, although the district court's error is completely understandable because *Vallejo* was decided after the trial of this case. In *Vallejo,* we held that expert testimony concerning the structure of drug trafficking organizations was inadmissible under Fed.R.Evid. 401 and 403 "where the defendant is not charged with a conspiracy to import drugs or where such evidence is not otherwise probative of a matter properly before the court." *Id.* at 1012. Vallejo, like McGowan, was apprehended during a border search after marijuana was discovered to be concealed in the vehicle. *Id.* at 1012–13. In *Vallejo,* as in this case, the defendant was charged with violating 21 U.S.C. §§ 841(a), 952 and 960. *Id.* at 1012. Neither Vallejo, nor McGowan, was charged with conspiracy, and in neither case did the government introduce any evidence establishing a connection between the defendant and a drug trafficking organization. *Id.* at 1015. Neither Vallejo, nor McGowan, indicated an intent to raise the lack of fingerprint evidence as probative of a lack of knowledge. *Id.* at 1016. The type of expert testimony adduced at trial in each case was virtually identical. *See id.* at 1013–14. In short, upon close examination, there are no prin-

cipled distinctions to be made between *Vallejo* and the case at bar.

The rationale provided by the district court, albeit without the guidance of *Vallejo,* does not justify a departure from *Vallejo.* The first reason—explanation of timing—is not relevant because the expert witness did not testify concerning the timing of the transaction, nor did the government argue the point. The second reason, dispelling the stereotype of typical drug couriers, was a rationale we have explicitly rejected as justifying admission of expert testimony in the government's case in chief. *United States v. Beltran–Rios,* 878 F.2d 1208, 1212–13 (9th Cir.1989). The third reason, rebuttal of an expected defense based on the absence of fingerprints on the drug packages, is a rationale rejected in *Vallejo* when the defendant has not affirmatively asserted the defense. 237 F.3d at 1016. In short, none of the reasons given by the district court remove this case from *Vallejo*'s general rule.

Further, contrary to the government's assertion, defense counsel did not "open the door" to admission of the expert testimony at trial. The closest defense counsel came to asserting a lack of fingerprint defense was to question agents about whether they used gloves when examining the evidence. Thus, the issue was not affirmatively raised and was not at issue when the government expert testified. Allowing expert testimony based on an anticipation of a defense that the defendant has not yet asserted is improper. *United States v. Lim,* 984 F.2d 331, 335 (9th Cir. 1993); *Beltran–Rios,* 878 F.2d at 1213 n. 2; *see also Vallejo,* 237 F.3d at 1016.

Finally, *United States v. Murillo,* 255 F.3d 1169 (9th Cir.2001), a case also decided after the trial of this action, is not to the contrary. In *Murillo,* we allowed expert testimony about the operation and structure of drug trafficking organizations

in a non-complex, non-conspiracy case. However, in *Murillo*, in contrast to the circumstances involved in both *Vallejo* and the instant case, the defendant "designated a fingerprint expert before trial and argued in his defense at trial that no fingerprints were found on the drug packages." 255 F.3d at 1177. Further, the issue in *Murillo* was purely one of the relevance of the testimony under Fed.R.Evid. 401 and 704; *Murillo* did not involve an evidentiary challenge under Fed.R.Evid. 403, as did *Vallejo* and the case at bar. Thus, *Murillo* is inapposite.

## IV

For these reasons, under the circumstances presented by this case, the expert testimony offered by the government should not have been admitted. Because reversal is required on this issue, we need not reach any other issue urged by defendant.

**REVERSED.**