**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Vicente PINEDA–TORRES,**
**Defendant–Appellant.**

**No. 01–50133.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed April 23, 2002.

---

Shereen J. Charlick, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant.

Patrick K. O'Toole, United States Attorney, and Bruce R. Castetter, and Scott H. Saham, Assistant United States Attorneys, San Diego, CA, for plaintiff-appellee.

Before: REINHARDT and TALLMAN, Circuit Judges, and DAMRELL,* District Judge.

REINHARDT, Circuit Judge.

■ Vicente Pineda–Torres appeals his convictions for importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 and possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He argues that the district court abused its discretion when it admitted expert testimony regarding the structure of drug trafficking organizations in a

---

* The Honorable Frank C. Damrell, Jr., United States District Judge for the Eastern District of California, sitting by designation.

simple, non-conspiracy importation case. Because we hold that the district court committed prejudicial error when it admitted this expert testimony, we reverse.[1]

## I. BACKGROUND

Vicente Pineda–Torres had just entered the United States from Mexico by automobile when he was stopped at the primary inspection area at the San Ysidro Port of Entry. Customs Inspector Cruz approached his vehicle and asked him about his citizenship. Pineda–Torres presented his INS documents, which showed that he was a permanent resident of Southern California, and told the inspector that he was returning from visiting a friend in Tijuana. When Inspector Cruz asked him who owned the vehicle, Pineda–Torres told him a friend named Bob Armando Rodriguez. He then provided the inspector with the registration and correctly recited the registered owner's address.

Inspector Cruz testified at trial that Pineda–Torres appeared nervous, didn't make eye contact, was looking down, and had a scratch in his voice when answering questions. Inspector Cruz's notes from that day, however, do not mention anything about Pineda–Torres not making eye contact, looking down, or having a scratchy voice. The only description that was re-corded in Inspector Cruz's notes was a notation that a "Mr. Beltran" appeared nervous. At trial, Inspector Cruz said that this must have been a typographical error because the notation was intended to refer to Pineda–Torres.

Inspector Cruz brought a drug-sniffing dog over to Pineda–Torres's car. After the dog alerted to the front dashboard of the car, Pineda–Torres was escorted to the secondary inspection area where Inspector Tibbetts examined the car. Tibbetts discovered twenty-three packages of marijuana weighing 42.7 pounds hidden from view in secret compartments behind the glove compartment.

Pineda–Torres was charged with importation of marijuana and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 952, 960, and 841. Before trial, the government sent a letter to the defense stating its intention to introduce expert testimony about the structure of drug trafficking organizations including testimony that:

(1) the drivers of load vehicles typically do not own the drugs they are transporting; (2) the driver of a load vehicle is typically not the person responsible for loading the drugs into the car, and, accordingly, fingerprinting is generally

---

1. Pineda–Torres also argues that the district court erred by (1) denying his motion for judgment of acquittal on the importation charge because the government failed to prove that he actually crossed the border and "brought the marijuana" into the United States; (2) failing to dismiss the indictment due to the invalid appointment of the United States Attorney in violation of the Appointments and Vacancies Clause of the Constitution of the United States; and (3) failing to dismiss the indictment because 21 U.S.C. §§ 841 and 960 are facially unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

First, we reject Pineda–Torres's claim that there was insufficient evidence to convict him of importation. Customs Inspector Cruz testified that Pineda–Torres had already crossed the border into the United States when he was stopped at the primary inspection area. Second, Pineda–Torres's argument that the United States Attorney's appointment violates the Appointments and Vacancies Clause is precluded by this court's holding in *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999). Third, in light of our recent decisions in *United States v. Buckland*, 277 F.3d 1173 (9th Cir.2002) (en banc), and *United States v. Mendoza–Paz*, No. 00–50029, 2002 WL 531153 (9th Cir. Apr.10, 2002), we reject Pineda–Torres's claim that 21 U.S.C. §§ 841 and 960 are facially unconstitutional.

not a useful tool in the investigation of border busts; and (3) the driver of a load vehicle is typically not entrusted with transporting the vehicle to a load house, but usually only to a neutral site.

At the motion in limine hearing, the district judge ruled that he would allow the government's witness to testify about the structure of drug trafficking organizations including the futility of collecting fingerprints because of the compartmentalized nature of drug trafficking organizations. The district judge then told Pineda–Torres to "make [his] plan accordingly." In response to this directive, the defense cross-examined the government's witnesses about their failure to obtain fingerprints from Pineda–Torres's vehicle. One of these witnesses was Special Agent Robert Villars of the United States Customs Service. Special Agent Villars testified as an expert and explained, over defense objection, how drug trafficking organizations are structured. Specifically, Villars testified that, in a drug trafficking organization, all of the functions are compartmentalized with each member having a specific duty. There are those who grow the marijuana, those who store it, those who package it, those who find cars and drivers to smuggle it, and those who sell it. He also testified on direct that fingerprinting drug packaging would not be a valuable tool during drug courier investigations because drug trafficking organizations are intentionally structured so that drivers do not load the drugs into the car.[2]

The defense presented no evidence. The only element at issue in the trial was whether Pineda–Torres knew that the drugs were in the car. During closing arguments, the government contended that, because Pineda–Torres was part of a "sophisticated drug organization," he must have known that drugs were in the car. The defense responded by arguing that the government did not present evidence sufficient to establish knowledge. Pineda–Torres was convicted on both counts. He was sentenced to 37 months in prison, 3 years supervised release, and a $200 special assessment. He appeals his convictions.

## II. ANALYSIS

The case before us is, in almost all respects, similar to *United States v. Vallejo,* 237 F.3d 1008, 1012 (9th Cir.2001), *amended by* 246 F.3d 1150 (9th Cir.2001), in which we held that the admission of expert testimony about the structure of drug trafficking organizations violates Federal Rules of Evidence 401 and 403 "whe[n] the defendant is not charged with a conspiracy to import drugs or whe[n] such evidence is not otherwise probative of a matter properly before the court." *See also United States v. Varela–Rivera,* 279 F.3d 1174, 1179 (9th Cir.2002) (holding that expert testimony concerning the structure of drug trafficking organizations was irrelevant and prejudicial in a border courier case and therefore inadmissible under Federal Rules of Evidence 401 and 403); *United States v. McGowan,* 274 F.3d 1251, 1253–55 (9th Cir.2001) (holding that expert testimony regarding the structure of drug trafficking organizations was inadmissible in a non-conspiracy importation case).

Vallejo, like Pineda–Torres, was driving a car from Mexico into the United States when he was stopped at the border where his car was searched and marijuana packages were found in hidden compartments. *Vallejo,* 237 F.3d at 1013; *see also*

---

**2.** Additionally, Special Agent Villars testified that drug trafficking organizations intentionally use a packaging material that makes it difficult to lift clear fingerprints and that any recoverable prints would probably be from someone "south of the border" whose prints are not on file in the United States.

*Varela–Rivera,* 279 F.3d at 1176 (cocaine and methamphetamine found in the vehicle); *McGowan,* 274 F.3d at 1253 (marijuana found in the vehicle). Vallejo, like Pineda–Torres, was charged with importation of marijuana and possession with intent to distribute. *Vallejo,* 237 F.3d at 1012; *see also Varela–Rivera,* 279 F.3d at 1176 (charged with importation of cocaine and methamphetamine and possession with intent to distribute); *McGowan,* 274 F.3d at 1252 (charged with importation of marijuana and possession with intent to distribute). Neither Vallejo, nor Pineda–Torres, was charged with conspiracy and in neither case did the government introduce any evidence establishing a connection between the defendant and a drug trafficking organization. *Vallejo,* 237 F.3d at 1015; *see also Varela–Rivera,* 279 F.3d at 1179 (same); *McGowan,* 274 F.3d at 1254 (same). The only issue in both Vallejo's and Pineda–Torres's trials was whether the defendant knew that there were drugs in the car. *Vallejo,* 237 F.3d at 1017. At both trials, an expert testified about how drug trafficking organizations divide responsibilities among the people who grow, store, smuggle, and sell drugs. *Vallejo,* 237 F.3d at 1013–14; *see also Varela–Rivera,* 279 F.3d at 1176–77 (same); *McGowan,* 274 F.3d at 1253–54 (same).[3]

The implication of the expert testimony and the government's argument to the jury in both cases was plainly that the defendant was a member of an international drug organization and had knowledge

that drugs were in the car. *Vallejo,* 237 F.3d at 1017. In Pineda–Torres's case, as in *Vallejo,* the state did not articulate a theory of relevance for the drug structure testimony at the trial. *Id.* at 1015. On appeal in this case, however, the government argued that the purpose of the expert testimony was to show that Pineda–Torres knew that drugs were in the car. We explicitly rejected that reason for offering drug structure evidence in *Vallejo* when we stated that "had that been the [government's] purpose, the district court should properly have excluded it under Rule 403 of the Federal Rules of Evidence." *Vallejo,* 237 F.3d at 1016. To the extent that the *Vallejo* statement may be dictum, we adopt it as a holding here.

In *Vallejo,* we compared the admission of expert testimony about the structure of drug trafficking organizations to the improper use of drug courier profiles and held that the district court abused its discretion when it admitted expert testimony about the structure and operation of drug trafficking organizations in a simple border bust case. *Id.* at 1017. Moreover, because the testimony "unfairly imputed specific knowledge to Vallejo and knowledge was the central question before the jury," we concluded that the error was prejudicial and required reversal. *Id.* The same is true here.[4]

Our decision in *United States v. Murillo,* 255 F.3d 1169 (9th Cir.2001), does not require a different result. *Murillo* did not involve expert testimony about the struc-

---

**3.** Special Agent Robert Villars provided virtually identical expert testimony in both McGowan and Pineda–Torres's trials. *McGowan,* 274 F.3d at 1253. We held that admission of Special Agent Villars's testimony was reversible error in *McGowan.* *Id.*

**4.** The fact that Pineda–Torres did not testify and affirmatively deny knowledge of the drugs that were found in the car is not dispositive. Both parties recognized in their closing

arguments to the jury that the only issue in the case was knowledge. Because the improper expert testimony about the structure of drug trafficking organizations was admitted to support the government's contention of knowledge, the testimony was prejudicial regardless of whether Pineda–Torres affirmatively denied knowledge or argued that the government had not proven knowledge.

ture of drug trafficking organizations. Rather, *Murillo* involved "unknowing drug courier" *modus operandi* testimony—expert testimony that drug traffickers do not routinely entrust large quantities of drugs to people who are unaware that they are transporting them. *Id.* at 1176. In that case, we held that "unknowing drug courier" testimony was admissible in a drug possession case involving over one million dollars worth of methamphetamine and cocaine to attack the defendant's defense that he was "simply an unknowing courier." *See id.* at 1176–77; *see also United States v. Campos,* 217 F.3d 707, 712 (9th Cir.2000) (holding that unknowing drug courier testimony was admissible in a complex drug importation case); *United States v. Cordoba,* 104 F.3d 225, 230 (9th Cir. 1997) (same).

We distinguished the expert testimony in *Murillo* from that in *Vallejo* by stating that unknowing drug courier testimony, unlike testimony about the structure of drug trafficking organizations, does not require an expert to "extrapolate about the various roles individuals might play in hypothetical drug trafficking organizations" and does not "imply that [the defendant] participated in a large-scale operation." *Murillo,* 255 F.3d at 1177; *see also Vallejo,* 237 F.3d at 1016, *as amended by* 246 F.3d 1150 (declining to address the admissibility of unknowing drug courier testimony because "[t]his case does not involve the Government's use of 'unknowing courier' testimony"). Instead, an expert presenting "unknowing drug courier" testimony in a complex case looks at the specific facts involved and, in light of his investigative experience, offers his opinion that it would be illogical and contrary to general practice for a drug trafficker to take the very risky step of entrusting his valuable cargo to an unknowing courier.

By contrast, an expert providing testimony about the structure of drug trafficking organizations attributes knowledge to the defendant by attempting to connect him to an international drug conspiracy and thus implies that the defendant "participated in a large-scale operation." *Compare Murillo,* 255 F.3d at 1177. There is no direct evidence associating the defendant with a drug trafficking organization so the expert uses the "blueprint" structure of international drug trafficking organizations as a means of doing so. Because "[c]riminal prosecutions cannot be blueprinted, but must be tailored to the charges and facts of each case in consideration of the individual rights of each defendant," this method of imputing knowledge lacks any probative value and is impermissible. *Vallejo,* 237 F.3d at 1017.

■ We also reject the government's contention that in this case defense counsel "opened the door" to the drug structure testimony by cross-examining the customs agents about their failure to lift fingerprints from the drug packages and the vehicle.[5] We have held that limited drug structure testimony is admissible in drug importation cases when the defense opens the door by introducing evidence that the government did not attempt to lift fingerprints. *See, e.g., United States v. Alatorre,* 222 F.3d 1098, 1100 n. 3 (9th Cir. 2000). In this case, however, it was not Pineda–Torres who first introduced the fingerprint evidence issue. Rather, the government notified the defense that it intended to have Special Agent Villars testify that fingerprinting would not be helpful in drug importation cases because of the compartmentalized structure of drug

---

5. That is what occurred in *Murillo,* a case in which the defense engaged a fingerprint expert and initiated the inquiry at trial regarding the lack of fingerprints on the drug packages. *Murillo,* 255 F.3d at 1177.

trafficking organizations. When, at an in limine hearing, Pineda–Torres objected to the proposed testimony because it impermissibly implied that he was connected to a drug trafficking organization, the district judge ruled that the government's evidence would be admitted and instructed Pineda–Torres to "plan accordingly." It was in accordance with this instruction that the defense subsequently questioned the government customs agents on cross examination about the lack of fingerprint evidence. Indeed, Pineda–Torres did precisely what the district judge told him to do and made his trial plans knowing that the government would adduce expert testimony as to the futility of obtaining fingerprint evidence in light of the structure and method of operations of drug trafficking organizations. Under these circumstances, we cannot conclude that it was the defendant who "opened the door."

■ Because knowledge was the only element at issue in Pineda–Torres's case and because the admission of expert testimony about the structure of drug trafficking organizations "portrayed [Pineda–Torres] as a member of an enormous international drug trafficking organization and implied that he knew of the drugs in his car because of his role in that organization," *Vallejo*, 237 F.3d at 1017, the error was prejudicial and requires reversal. If anything, the expert testimony in Pineda–Torres's case was even more prejudicial than the testimony in *Vallejo*. In the present case, there was no evidence that Pineda–Torres admitted knowledge that there were drugs in the car, whereas, in *Vallejo*, the customs agent testified that the defendant stated that his friend had refused to drive the vehicle because it had drugs in it. *Vallejo*, 237 F.3d at 1013. Here, aside from the presence of the marijuana in the car and the minimally probative testimony regarding Pineda–

Torres's apparent nervousness offered by a border agent whose notes contain significant omissions and a name other than the defendant's, the improper expert testimony imputing knowledge to Pineda–Torres by virtue of his implied connection to an international drug trafficking organization was the only evidence presented to establish that Pineda–Torres knew that drugs were in the car.

## III. CONCLUSION

Because we hold that the district court committed prejudicial error when it admitted expert testimony about the structure of drug trafficking organizations, we reverse Pineda–Torres's convictions and remand his case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**