**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan Alfredo PEREZ, Defendant–Appellant.**

**No. 07–10207.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2008.

Filed April 1, 2008.

610

Tracey A. Bardorf, Esq., James R. Knapp, USPX–Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Adrian P. Fontes, The Law Offices of Adrian P. Fontes, Phoenix, AZ, for Defendant–Appellant.

Before: SILVERMAN, McKEOWN, and TALLMAN, Circuit Judges.

MEMORANDUM *

Juan Alfredo Perez challenges his conviction and sentence for the transportation of illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(iii). We reverse because the district court erred by

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

admitting prejudicial expert testimony on alien smuggling organizations, and the error was not harmless. *See United States v. Pineda–Torres,* 287 F.3d 860, 864–65 (9th Cir.2002); *United States v. Vallejo,* 237 F.3d 1008, 1012 (9th Cir.2001), *amended by* 246 F.3d 1150 (9th Cir.2001).

■ We review a district court's evidentiary rulings for abuse of discretion and review de novo alleged violations of the Confrontation Clause. *United States v. Cruz–Escoto,* 476 F.3d 1081, 1085 (9th Cir. 2007); *United States v. Orellana–Blanco,* 294 F.3d 1143, 1148 (9th Cir.2002). Perez challenges the admission of a material witness deposition transcript, which, because of a videotape malfunction, was read into evidence, and not shown to the jury on a videotape. The admission of the transcript did not violate the Confrontation Clause. The parties waived the actual presence of the material witness, who was unavailable at the time of trial, and Perez had the opportunity to, and did, cross-examine the witness. *See* FED. R. EVID. 804(b)(1). Perez does not point to any error in the transcript, nor any prejudice that resulted from reading the transcript into evidence. The district court did not abuse its discretion in admitting the transcript.

■ The district court also admitted expert testimony relating to the organization of alien smuggling operations. The only portions of the agent's testimony that were relevant to the charges against Perez concerned the characteristics of the border area in which Perez picked up his passengers. *See* FED.R.EVID. 401. However, it was error to permit the government to introduce expert testimony relating to alien smuggling organizations because there was no evidence of any connection between Perez and an alien smuggling organization. *Pineda–Torres,* 287 F.3d at 864–65; *Vallejo,* 237 F.3d at 1017. Testi-

mony about the "blueprint" structure of alien smuggling organizations, and the roles played by different persons within those organizations, "attributes knowledge to the defendant by attempting to connect him to an international [ ] conspiracy and thus implies that the defendant participated in a large-scale operation[,]" when the record reflects that Perez was, by all accounts, a one-man show. *Pineda–Torres,* 287 F.3d at 865 (internal quotation marks omitted). This "method of imputing knowledge lacks any probative value and is impermissible." *Id.*

■ The district court's error was not harmless. "Where we discover an error not of constitutional magnitude, we must reverse unless there is a fair assurance of harmlessness or, stated otherwise, it is more probable than not that the error did not materially affect the verdict." *United States v. Mejia–Pimental,* 477 F.3d 1100, 1109 (9th Cir.2007) (quoting *United States v. Gonzalez–Flores,* 418 F.3d 1093, 1099 (9th Cir.2005)). The record does not provide a fair assurance of harmlessness. To be sure, Perez's flight from Border Patrol agents is circumstantial evidence indicating guilt. However, the material witness's testimony points to the opposite conclusion. He testified, without contradiction, that he paid a man in Mexico to help him enter the United States. After crossing the border, the guide left him and his fellow travelers in the desert in the middle of the night, with no food and only the direction to continue "straight" until they came to a road. The group traveled for two and a half days after the guide abandoned them, and then flagged down the driver of a passing truck. The driver, Perez, did not slow down before he was flagged down, and agreed to give the group a ride after they told him that they were very cold and hungry. In the absence of other evidence, the material witness's

testimony suggests that Perez was simply rendering humanitarian aid.

The flight evidence fails to negate the direct evidence supplied by the material witness that strongly supports a non-incriminating interpretation of the facts. The agent's testimony on alien smuggling organizations "connected seemingly innocent conduct to a vast [ ] empire," by suggesting that Perez was part of such an organization and was playing a specific role within it in picking up and transporting the group of travelers. *Vallejo,* 237 F.3d at 1017. As the government was required to prove beyond a reasonable doubt that Perez knowingly transported the aliens to help them remain in the United States illegally, we cannot say that it is "more probable than not" that the admission of this testimony "did not materially affect the verdict," and reverse the conviction on that basis. *Mejia–Pimental,* 477 F.3d at 1109. In view of this conclusion, we need not address the Rule 29 issue.

**REVERSED.**

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

I agree there was no error in admission of the unsigned transcript of the sworn testimony of the material witness when it was later discovered that the video recorder had malfunctioned. The admission of expert testimony relating to the organization of alien smuggling operations was harmless error. *See United States v. Mejia–Pimental,* 477 F.3d 1100, 1109 (9th Cir.2007). On cross-examination, Agent McHugh admitted that there was no evidence connecting Perez to a large-scale alien smuggling operation. This concession eliminated any prejudicial effect his testimony may have had on the jury.

The defense was that Perez was just a good Samaritan who offered lost and hungry aliens a ride to civilization. But the jury heard powerful evidence that instead of yielding to their lights and siren, Perez fled from Border Patrol agents at times reaching speeds of between 80 to 85 miles an hour. When the vehicle became disabled, Perez continued his flight on foot, leading a Border Patrol agent over two barbed wire fences, across an interstate highway, and over an eight-foot chain linked fence before he was captured.

In both *United States v. Pineda–Torres,* 287 F.3d 860 (9th Cir.2002), and *United States v. Vallejo,* 237 F.3d 1008 (9th Cir. 2001), there was apparently no evidence that the defendants knew they were transporting illegal contraband. On this record it belies common sense to suggest a jury would find otherwise when the government presented such strong evidence that Perez either knew, or was in reckless disregard of the fact, that his cargo consisted of illegal aliens. Why else would he run? Based on this evidence I am convinced it is more probable than not that any error did not materially affect the verdict.

I respectfully dissent.