**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ALEJANDRO SEPULVEDA-BARRAZA,
          *Defendant-Appellant.*

No. 09-10362

D.C. No.
CR 07-01773-TUC-
CKJ

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
November 1, 2010—San Francisco, California

Filed March 3, 2011
Amended July 15, 2011

Before: Ronald M. Gould and Sandra S. Ikuta,
Circuit Judges, and James C. Mahan, District Judge.*

Opinion by Judge Ikuta

---

*The Honorable James C. Mahan, United States District Judge for the
District of Nevada, sitting by designation.

## COUNSEL

Robert L. Miskell (argued) and Joshua C. Mellor, United States Department of Justice, Tucson, Arizona, for plaintiff-appellee United States of America.

Daniel L. Kaplan, Federal Public Defender's Office, Phoenix, Arizona, for defendant-appellant Alejandro Sepulveda-Barraza.

## ORDER

The opinion filed March 3, 2011, and published at 634 F.3d 1075 (9th Cir. 2011) is superseded by the amended opinion below.

With these amendments, the panel has voted to deny Appellant's Petition for Panel Rehearing filed on May 18, 2011. Judges Gould and Ikuta have voted to deny the en banc petition, and Judge Mahan so recommends.

The full court has been advised of the Petition for Rehearing En Banc and no Judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The Petition for Rehearing and the Petition for Rehearing En Banc are DENIED. No further petitions for rehearing shall be entertained.

**OPINION**

IKUTA, Circuit Judge:

Alejandro Sepulveda-Barraza appeals his conviction for importation of cocaine and possession with the intent to distribute, claiming that the district court erred in admitting expert testimony regarding the structure and operations of drug-trafficking organizations and unknowing drug courier modus operandi, including testimony that drugs are rarely smuggled by unknowing couriers. We hold that the district court did not abuse its discretion in admitting this testimony, because it was relevant, probative, and not unduly prejudicial in light of Sepulveda-Barraza's defense theory that he did not know that he was transporting drugs, and because he opened the door to the testimony by providing notice that he intended to call an expert witness to testify that drug trafficking organizations sometimes utilize unknowing couriers to smuggle drugs across the border.

I

On September 11, 2007, Sepulveda-Barraza was stopped by government inspectors at a port of entry in Nogales, Arizona. He claimed that he was driving across the border to run errands at Wal-Mart, but was only carrying $21 in United States currency. Because he seemed a "little nervous" and a "little too friendly," an inspector referred him for secondary inspection. At secondary inspection, officers discovered eleven packages of cocaine hidden in the seats of his vehicle.

A grand jury indicted Sepulveda-Barraza on one count of importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1), (b)(1)(B)(ii) and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II). The first trial ended in a deadlocked jury and mistrial. Before the second trial, defense counsel filed a notice that he intended to call an expert wit-

ness, retired FBI Special Agent Erik Godtlibsen, to testify that drug trafficking organizations sometimes use unknowing couriers (known as "blind mules") to smuggle drugs across the border. The government then filed a notice of its intent to call Immigration and Customs Enforcement ("ICE") Supervisory Special Agent Juan Bortfeld to provide expert testimony regarding the control of drug couriers by drug trafficking organizations, the street value of the cocaine found in Sepulveda-Barraza's vehicle, and the implausibility that drug traffickers would entrust valuable drug loads to an unknowing individual.

Defense counsel filed a motion in limine to exclude Bortfeld's testimony regarding these issues, but the district court denied the motion in reliance on our decision in *United States v. Murillo*, 255 F.3d 1169, 1176-78 (9th Cir. 2001), *overruled on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005). In *Murillo*, we held that expert testimony on the operation and structure of drug trafficking organizations, including testimony about "typical travel itineraries of drug couriers," how "drug traffickers do not entrust large quantities of drugs to people who are unaware that they are transporting them," and "the value of the drugs" found in a courier's car, *Murillo*, 255 F.3d at 1176, is admissible when relevant, probative, and not unfairly prejudicial, *id.* at 1177-78. Accordingly, the district court ruled that the government could testify regarding the matters allowed by *Murillo*.

At trial, retired Special Agent Godtlibsen (the defense expert) testified that he recalled two instances in which unknowing drivers had been used by drug traffickers. In both instances, the drivers crossed the border each day to go to work, and parked their vehicles in the same location each time. Godtlibsen testified that traffickers would have to spend a substantial amount of time profiling an unknowing driver to ensure that the driver would travel to a known location where the traffickers could retrieve their drugs. He also stated that the traffickers would not put drugs in a car unless they knew

where they could retrieve the drugs, and concluded that the use of unknowing couriers was "rare."

Bortfeld (the government's expert) first testified regarding the basis of his knowledge, experience, and background, including his experience as an undercover drug courier transporting and delivering drugs to various locations, the relationship between drug traffickers and drug couriers, different methods of transporting drugs, and fees paid for transporting drugs. Bortfeld then testified regarding the implausibility of Sepulveda-Barraza's alleged lack of knowledge that the drugs were in his car. Bortfeld explained that drug traffickers want to maintain control of the drugs they are transporting, and that they would need to know who was transporting the drugs and when they could be retrieved. Further, he testified that drug traffickers do not typically use unknowing drivers to transport drugs, and that he knew of only one occasion in which an unwitting courier was used. Finally, Bortfeld testified that the cocaine in Sepulveda-Barraza's car had a value of between $154,000 and $183,000 in the Tucson area. Defense counsel did not object to Bortfeld's testimony during direct examination.

During redirect, the prosecutor asked Agent Bortfeld whether, given that the drugs being smuggled were worth hundreds of thousands of dollars, a drug trafficker was likely to use an unknowing drug courier in order to avoid paying a fee to a courier who understood the risks. Defense counsel objected to the question as "beyond the scope," but the court overruled the objection. Bortfeld testified that "when the value of the narcotics or the drugs are in the hundred thousand dollar range or above, the cost of a driver is minimal" and so "there's an inherent benefit to making the payment" and having a reliable means of smuggling the load to the intended destination.

At the end of the second trial, the jury convicted Sepulveda-Barraza on both counts, and the district court sen-

tenced him to 120 months of incarceration and 60 months of supervised release.

## II

On appeal, Sepulveda-Barraza argues that the district court abused its discretion in admitting Bortfeld's testimony. Before reaching this issue, we must determine whether to review the district court's admission of Bortfeld's testimony for abuse of discretion or plain error. Sepulveda-Barraza argues that he objected to Bortfeld's testimony in his motion in limine, and had no obligation to renew his objection at trial. We agree. "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(a). A district court's decision that the probative value of evidence exceeds its potential for unfair prejudice, and the court's decision to admit that evidence, are reviewed for abuse of discretion. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc).

We next turn to the question of whether the district court erred in allowing Bortfeld's testimony. According to Sepulveda-Barraza, *United States v. Vallejo* established the per se rule that the government may not introduce expert testimony describing the "general structure and operations of drug trafficking organizations" because the introduction of such testimony inevitably creates the implication that the defendant "had knowledge of how the entire organization operated, and thus knew he was carrying the drugs." 237 F.3d 1008, 1012, 1017 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001). Moreover, Sepulveda-Barraza urges us to extend the rationale of *Vallejo*, and hold that an expert's testimony that a drug trafficking operation is unlikely to use an unknowing drug courier is always inadmissible in a non-complex case such as this one. Because Bortfeld's testimony addressed both

issues, Sepulveda-Barraza argues, the district court abused its discretion in admitting it.

We disagree. First, Agent Bortfeld's testimony pertained primarily to the modus operandi of drug couriers, which falls outside the scope of *Vallejo*. *See* 246 F.3d at 1150 n.3 (expressly stating that the court was "not address[ing] the admissibility of [unknowing courier] testimony" because *Vallejo* "does not involve the Government's use of 'unknowing courier' testimony, in which a law enforcement official testifies that certain drug traffickers do not entrust large quantities of drugs to unknowing transporters").

**[1]** Second, testimony on the structure and operations of drug trafficking organizations is admissible under certain circumstances, such as when a defendant opens the door to such evidence. *See, e.g.*, *United States v. Pineda-Torres*, 287 F.3d 860, 865 (9th Cir. 2002) ("We have held that limited drug structure testimony is admissible in drug importation cases when the defense opens the door by introducing evidence that the government did not attempt to lift fingerprints."). Neither *Vallejo* nor its progeny supports the establishment of a per se rule that expert testimony regarding the operation and structure of drug trafficking organizations or the modus operandi of couriers involved in drug trafficking organizations is inadmissible. Indeed, such a rule would be inconsistent with the case-by-case approach mandated by Federal Rule of Evidence 403. *See United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc) (observing that "the considerations arising under Rule 403 are susceptible only to case-by-case determinations" (internal quotation marks omitted)). We rejected a similar argument in *United States v. Valencia-Amezcua*, 278 F.3d 901 (9th Cir. 2002). In that case, the defendant (like Sepulveda-Barraza) argued that *Vallejo* "requires in every case the exclusion of expert testimony on the structure of drug organizations where, as here, the defendant is not charged with conspiracy." *Id.* at 909. In declining to accept this argument, we noted that *Vallejo* cannot "reasonably be read so

broadly," because we must independently determine whether the expert testimony is relevant and probative on a case-by-case basis. *Id.* at 909 n.5.

Contrary to Sepulveda-Barraza's argument, *Vallejo* merely held, consistent with long-established precedent, that a district court abuses its discretion by admitting evidence that has no relevance to any matter to be proved at trial. In *Vallejo*, the defendant was arrested at the border when forty kilograms of marijuana were found hidden in his car and was charged with importing and possession with intent to distribute marijuana. 237 F.3d at 1012-13. At trial, the government introduced "[e]xpert testimony regarding the structure of drug trafficking organizations and the wages earned by drug couriers." *Id.* at 1013. However, "the Government never articulated—either in its briefs or at oral argument—how the testimony was relevant to Vallejo's particular case." *Id.* at 1015-16. Instead, the government explained that it routinely introduced this information in order to rebut a defendant's claim that the lack of fingerprints on the drug packages showed that the defendant was unaware of the presence of the drugs. *Id.* at 1016. Vallejo, however, had not made this fingerprint argument. *Id.* Moreover, while the expert's testimony was not relevant to Vallejo's case, it was prejudicial because "the implication of [the government expert's] testimony was that Vallejo had knowledge of how the entire organization operated." *Id.* at 1017. Given that the expert testimony lacked any probative value, we held that the district court abused its discretion in admitting that testimony. *Id.* Although the government did not argue that the expert testimony was relevant to show Vallejo's knowledge, we observed that even if the government had made such an argument, "the district court should properly have excluded [the testimony] under Rule 403 of the Federal Rules of Evidence," *id.* at 1016, because the implication of that testimony "was that Vallejo had knowledge of how the entire organization operated, and thus knew he was carrying the drugs." *Id.* at 1017. We reasoned that this prejudicial effect would have outweighed any probative value because

the government's expert testimony "was not relevant to the Government's case against Vallejo," and was not "needed to assist the jury's understanding." *Id.*

**[2]** In subsequent cases we have noted the admissibility of unknowing drug courier modus operandi testimony, *see Murillo*, 255 F.3d at 1177-78; *see also Pineda-Torres*, 287 F.3d at 864-65. We have also held inadmissible under Rule 403 expert testimony on the structure and operations of drug trafficking organizations, but we have done so by engaging in fact-specific inquiries into the circumstances of each case. *See Pineda-Torres*, 287 F.3d at 864-65; *see also United States v. Varela-Rivera*, 279 F.3d 1174, 1179 (9th Cir. 2002); *United States v. McGowan*, 274 F.3d 1251, 1254-55 (9th Cir. 2001). In other words, neither *Vallejo* nor its progeny created a per se rule of inadmissibility.

**[3]** As noted above, Sepulveda-Barraza makes the further argument that we should extend our existing case law to create a rule that testimony about the use of unknowing couriers is per se inadmissible in a non-complex drug trafficking case. We decline this invitation. Testimony regarding the use of unknowing couriers by drug trafficking organizations is a subset of testimony about drug trafficking operations generally. Accordingly, for the reasons explained above, such evidence is admissible under the broad, case-by-case standard of Rule 403. *See, e.g.*, *United States v. Campos*, 217 F.3d 707, 712-13 (9th Cir. 2000); *United States v. Cordoba*, 104 F.3d 225, 229-30 (9th Cir. 1997). In fact, we upheld the admission of testimony regarding the modus operandi of drug couriers in *Murillo*, a non-complex case. *See McGowan*, 274 F.3d at 1254-55 (characterizing *Murillo* as "a non-complex, non-conspiracy case"). While Sepulveda-Barraza argues that *Murillo* upheld the admissibility of drug courier modus operandi only because the defendant had argued in his defense at trial that no fingerprints were found on the drug packages, *Murillo* imposed no such limitation on the scope of its holding. 255 F.3d at 1176-77.

**[4]** In sum, expert testimony on drug trafficking organizations and the behavior of unknowing couriers is admissible when relevant, probative of a defendant's knowledge, and not unfairly prejudicial under the standard set forth in the Federal Rules of Evidence. *See id.*; *Cordoba*, 104 F.3d at 229-30 (citing *United States v. Lim*, 984 F.2d 331, 334-35 (9th Cir. 1993)). Although our deference to the district court's broad discretion has limits, *see Vallejo*, 237 F.3d at 1017, we consider a district court's rulings on a case-by-case basis, not pursuant to per se rules, *Hinkson*, 585 F.3d at 1267.

## III

We now turn to the question of whether the district court abused its discretion in determining that Agent Bortfeld's expert testimony was relevant, probative, and not unduly prejudicial.

**[5]** Here Agent Bortfeld's expert opinion that the drugs in Sepulveda-Barraza's car were worth over $150,000, and that drug trafficking organizations do not normally use unwitting couriers due to the value of the drugs involved, "went right to the heart of [Sepulveda-Barraza's] defense that he was simply an unknowing courier." *Murillo*, 255 F.3d. at 1177. Because Sepulveda-Barraza provided notice that he would call an expert to testify regarding drug trafficking organizations' use of unknowing couriers, Bortfeld's testimony made it less probable that Sepulveda-Barraza was acting as an unknowing courier, and therefore the evidence was relevant. *See id.* at 1177-78. To the extent Bortfeld's testimony regarding his background and experience investigating drug trafficking organizations touched on the structure and operations of drug trafficking organizations, it was also relevant to establish that his expert opinion "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Therefore, the district court did not abuse its discretion in concluding that Bortfeld's expert testimony was relevant and probative.

**[6]** Nor did the district court abuse its discretion in ruling that the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *see United States v. Ramirez-Robles*, 386 F.3d 1234, 1246 (9th Cir. 2004). Unlike the expert testimony at issue in *Vallejo*, 237 F.3d at 1017, the government did not introduce Bortfeld's testimony to insinuate that Sepulveda-Barraza was connected to a large drug trafficking organization; Bortfeld "did not extrapolate the various roles individuals might play in hypothetical drug trafficking organizations, nor did he imply that [the defendant] participated in a large-scale operation." *Murillo*, 255 F.3d at 1177. Moreover, Sepulveda-Barraza opened the door to such testimony by noticing his intent to call Agent Godtlibsen to testify that "drug cartels" sometimes use "blind mule" couriers to smuggle drugs across the border and then eliciting such testimony at trial. Indeed, the close similarity between Agent Godtlibsen's testimony and Agent Bortfeld's testimony further undercuts Sepulveda-Barraza's claim of unfair prejudice.

**[7]** Accordingly, we conclude that Bortfeld's testimony was properly admitted because it was relevant, probative, and not unduly prejudicial. *See* Fed. R. Evid. 402, 403. Indeed, based on our examination of the totality of the "surrounding facts, circumstances, and issues," *Hinkson*, 585 F.3d at 1267 (quoting *R.B. Matthews, Inc. v. Transamerica Transp. Serv., Inc*., 945 F.2d 269, 272 (9th Cir. 1991)), the district court's decision to admit Bortfeld's testimony was not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Id.* at 1251. Therefore, the district court did not abuse its discretion in ruling that the testimony was admissible.

**AFFIRMED.**